**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2658-24

DEYANIRE GRANADOS,

    Plaintiff-Appellant,

v.

LTI, INC., NEW JERSEY
TRANSIT CORP., and
LANDSCAPE TECHNIQUES,
INC.,

    Defendants-Respondents.

_____

Argued April 16, 2026 – Decided April 27, 2026

Before Judges Gilson, Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2661-21.

Thomas F. Rinaldi argued the cause for appellant (Epstein Ostrove LLC, attorneys; Salomao Nascimento, on the briefs).

Mary C. McDonnell argued the cause for respondent LTI, Inc. (Pfund McDonnell PC, attorneys; David T. Pfund, of counsel; Mary C. McDonnell and David J. Guzik, on the brief).

Kody K. Hines argued the cause for respondent New Jersey Transit Corp. (Florio Perrucci Steinhardt Cappelli & Tipton, LLC, attorneys; Kody K. Hines, on the brief).

Keith T. Bostwick argued the cause for respondent Landscape Techniques, Inc. (Tyson & Mendes, LLP, attorneys; Keith T. Bostwick, on the brief).

PER CURIAM

In this personal injury slip and fall matter, plaintiff Deyanire Granados appeals from three orders granting summary judgment to defendants LTI, Inc. (LTI), New Jersey Transit Corp. (NJT), and Landscape Techniques, Inc. (Landscape) and dismissing her second amended complaint with prejudice. The motion court determined the undisputed facts established plaintiff slipped and fell on an icy sidewalk at the Delawanna Rail Station (Delawanna) in the City of Clifton (the City) during an ongoing snowstorm. Based on our de novo review of the record and the application of the legal standards set forth in <u>Rule</u> 4:46-2, we affirm.

I.

Factual Background

We summarize plaintiff's claim and the pertinent facts supported by the parties' <u>Rule</u> 4:46-2 statements, giving every reasonable inference to plaintiff as the non-moving party. <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins.</u>

Co. of Pittsburgh, 224 N.J. 189, 199 (2016). On February 18, 2021, at approximately 7:55 a.m., plaintiff deboarded the train and was descending the station's platform stairs when she slipped on a sidewalk at the base of the stairway. Her right foot had stepped onto the sidewalk, but she slipped on the ice before she could move her left foot off the step. Plaintiff sustained injuries to her left ankle, left lower extremity, and lower back.

Plaintiff contends the stairway had a "topographical condition" whereby melting snow and rain flowed from the platform directly toward the sidewalk, "regularly pooling and freezing in cold weather." According to plaintiff, the patch of ice that formed at the base of the stairway was a "foreseeable and recurring hazard" caused by the "sloped terrain" and inadequate drainage at Delawanna. Plaintiff asserts defendants failed to pretreat the area, inspect the site, or take reasonable measures to abate the hazardous conditions.

The record shows the snow began at approximately 7:00 a.m., and at the time of plaintiff's fall, it had snowed "0.1 to 0.2 inches." The snowstorm ended at approximately 3:00 p.m. that day.

## The Litigation

On March 31, 2021, plaintiff filed a three-count complaint against LTI. She alleged LTI was contracted for "snow removal and de[-]icing services at several of [NJT's] rail stations." Plaintiff asserted LTI had been negligent in

treating and removing the ice and snow, which caused her to slip and fall and suffer permanent injuries. Count three alleged LTI breached regulations that "constitute[] a statutory tort."

On December 28, 2021, plaintiff filed an amended complaint adding NJT as a defendant. Plaintiff alleged NJT "owned, operated, controlled, and/or maintained" the sidewalk where she fell and alleged NJT had been negligent. On April 12, 2024, plaintiff filed a second amended complaint—the operative pleading here—adding Landscape as a defendant, a company LTI subcontracted with to perform LTI's obligations under its snow removal contract with NJT.

After the close of discovery, defendants moved for summary judgment, contending plaintiff had not presented evidence demonstrating they had actual or constructive notice of a dangerous condition. Defendants argued the ongoing storm doctrine, recognized in Pareja v. Princeton Int'l Props., 246 N.J. 546 (2021), barred liability and no exception applied. NJT also maintained it was statutorily immune from liability under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3.

In opposition to defendants' motion for summary judgment, plaintiff's liability expert opined the site's configuration "directed runoff to pedestrian walkways," and the freezing of precipitation in the area where she fell. The expert stated the slope "exceeded [ten] degrees in places," and the "layout and

design" resulted in "recurrent icing" as water "predictably" collected and "refroze" in this area independent of storm activity. Plaintiff argued it was "commonly known" among NJT employees that the City's snowplows would push snow from the street onto the sidewalks after contractors had cleared them. Plaintiff argued her expert's statements created genuine issues of material fact.

Plaintiff's expert meteorologist provided data related to the weather on the date of the accident and for the two days prior. The meteorological data claimed that on the day of the accident, untreated ground surfaces "were covered with [two to three] inches of . . . snow and ice accumulation from all prior storms." The accumulation of snow and sleet at the conclusion of the storm on the day of plaintiff's accident was between "[three-and-a-half and four] inches."

On March 28, 2025, the court heard oral argument on defendants' motions and rendered an oral decision that same day. The court determined there was no evidence in the record, expert or otherwise, that defendants had actual or constructive notice of a dangerous condition. The court determined the record established the ice was "spontaneous and naturally occurring," and there was no proof that the ice "existed for any period of time that would make its existence obvious." The court reasoned plaintiff's slip and fall occurred during an active snowstorm, and no exception applied under the ongoing storm rule to allow plaintiff to recover for her injuries.

A-2658-24

The court noted the storm did not conclude until approximately seven hours after plaintiff fell. The court rejected plaintiff's liability expert's theory that the topographical condition could lead a jury to believe NJT was put on constructive notice. Citing Polzo v. County of Essex, the court held the mere existence of an alleged dangerous condition "is not constructive notice of it." 196 N.J. 569, 581 (2008) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

Regarding LTI and Landscape, the court reasoned they "did not increase or exacerbate the risk of plaintiff's fall," had no duty to remove the snow until a "reasonable time" after the storm ended, and had no duty to engage in "preventive measures" before a snowstorm because no duty is required under Pareja. Memorializing orders were entered. This appeal followed.

On appeal, plaintiff contends defendants had constructive notice of the hazardous condition created and exacerbated by the premises' topographical design of the stairway. Plaintiff further argues the court improperly applied the ongoing storm rule and genuine issues of material fact exist as to defendants' knowledge of and failure to address the alleged pre-existing hazardous conditions precluding summary judgment dismissal of her second amended complaint.

6

II.

When reviewing an order granting or denying summary judgment, we apply the standard under Rule 4:46-2(c), which is also used by the trial court when ruling on the motion. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment should be granted when the evidence before the court "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The motion court must determine facts in the light most favorable to the party opposing summary judgment. Igdalev, 225 N.J. at 479. However, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Thus, the trial court should grant summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

We first address plaintiff's claims that NJT, LTI, and Landscape had constructive notice of the dangerous condition. Plaintiff contends her liability expert's analysis, photographic evidence, and factual assertions from witnesses

provides sufficient evidence of genuine disputes of material fact precluding summary judgment.

Plaintiff slipped and fell on property owned by NJT, a public entity. The TCA allows imposition of tort liability against public entities for injuries caused by conditions of their property in limited circumstances. N.J.S.A. 59:4-2. To impose tort liability on a public entity, a plaintiff must establish: (1) the public entity's "property was in [a] dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition[.]" Polzo, 209 N.J. at 76; see also Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124-25 (2001). In addition, the fifth prong provides a public entity is not liable for a dangerous condition of its property "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2.

To establish negligence of private entities, such as LTI and Landscape, a plaintiff must also show the defendants had actual or constructive knowledge of the alleged dangerous condition. See Hopkins v. Fox & Lazo Realtors, 132 N.J.

426, 434 (1993) (explaining that a plaintiff must prove defendant's actual or constructive notice of a dangerous condition). We have also held "[t]he mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (second alteration in original) (citation omitted).

Plaintiff concedes there is no evidence that any of the defendants had actual notice of the icy condition that caused her to fall. Constructive notice exists when the condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b); see Chatman v. Hall, 128 N.J. 394, 418 (1992) (explaining the length of time during which an alleged dangerous condition existed as well as its alleged size created a reasonable inference that the defendant public entity had either actual or constructive notice of the condition).

Like the constructive notice requirement for public entities, private entities have constructive knowledge of a dangerous condition "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App.

Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)).

It has long been recognized that commercial landowners have a reasonable time in which to act to clear snow and ice from walkways. See Bodine v. Goerke Co., 102 N.J.L. 642 (E. & A. 1926) (holding that a property owner could not be liable for failing to remove slush or ice from the entrance to a store while the storm was still ongoing). Our Supreme Court has adopted this rule and held "commercial landowners do not have a duty to remove the accumulation of snow and ice until the conclusion of the storm," or "within a reasonable time after." Pareja, 246 N.J. at 557-58. The Court recognized removing snow during an ongoing storm is an "impossible burden" and "categorically inexpedient and impractical." Id. at 557-58. The Court also recognized that imposing a requirement on contractors to remove accumulated ice and snow would likewise be "unreasonable[]." Id. at 558.

Nevertheless, the Court noted two exceptions to the ongoing storm rule that "may give rise to a duty before then": (1) "commercial landowners may be liable if their actions increase the risk to pedestrians and invitees on their property, for example, by creating 'unusual circumstances' where the defendant's conduct 'exacerbate[s] and increase[s] the risk' of injury to the plaintiff"; and (2) "a commercial landowner may be liable where there was a preexisting risk on

10

the premises before the storm," including the duty to remove snow from a previous storm that has "since concluded." Id. at 558-59 (quoting Terry v. Cent. Auto Radiators, Inc., 732 A.2d 713, 717-18 (R.I. 1999)).

It is undisputed that plaintiff slipped on ice during an ongoing snowstorm. The motion court reasoned NJT, as a commercial landowner, owed no duty to remove snow or ice until the end of the snowstorm, or within a reasonable time thereafter. The same reasoning applies to LTI and Landscape. Moreover, the record establishes defendants complied with Section 383-1 of the City's administrative code, which requires removal of snow and ice within "[twenty-four] hours after the same shall fall or be formed thereon." Clifton, N.J. Code § 383-1 (amended 2024). Indeed, Landscape began snow removal at 8:10 a.m. We concur with the motion court's determination that the snow removal was "timely."

Plaintiff asserts the inherent features of the stairway, which allowed water to collect and turn into ice, was a condition of the property that created a substantial risk of injury. According to plaintiff, both the design of the stairway and the ice that accumulated at its base combined to create a dangerous condition. N.J.S.A. 59:4-2.

We reject plaintiff's contention that the topography at the station where she fell constituted a pre-existing hazardous condition, causing ice to pool on

11

the sidewalk, therefore creating a substantial risk of injury. There is no evidence establishing that the topography at the station or the stairway gave constructive notice that ice could form at the base of the stairs. Plaintiff concedes there is no evidence that anyone previously fell on ice at the bottom of the stairs. Nor was there any evidence that any defendant knew ice accumulated at the bottom of the stairs.

Moreover, plaintiff did not present any evidence that NJT had constructive notice as defined by N.J.S.A. 59:4-3(b). Instead, plaintiff's evidence only showed that the ice caused her fall. The mere existence of an alleged dangerous condition, without sufficient evidence of "how long" the dangerous condition existed, does not satisfy constructive notice. Polzo, 196 N.J. at 586. See also id. at 581 (an engineering report, "[s]tanding alone," is "insufficient to sustain plaintiff's burden" on constructive notice). Thus, we are unpersuaded by plaintiff's contention that NJT acknowledged prior challenges in monitoring all of its stations. The motion court aptly pointed out plaintiff speaks only in general terms, without "reference to any other falls or complaints about the ice accumulation on the sidewalk in the station." The record supports that determination.

Furthermore, plaintiff cannot show that waiting one hour and several minutes after the commencement of a snowstorm to de-ice the station was

"palpably unreasonable," because it was "behavior that is patently unacceptable under any given circumstance" and is "manifest and obvious that no prudent person would approve" of the inaction. N.J.S.A. 59:4-2. Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003); Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009). Rather, the record shows "snow began to accumulate between 6:50 and 7 [a.m.]," plaintiff's fall occurred at 7:55 a.m., and a Landscape employee arrived at approximately 8:10 a.m. and applied three bags of de-icer to the walkways.

On this point, we note Landscape acted in accordance with the terms of LTI's contract with NJT, which states "areas can be pre-salted at the [c]ontractor's discretion." See Est. of Gonzalez v. City of Jersey City, 247 N.J. 551, 571 (2021) (explaining that "[w]hen a public entity's or employee's actions are discretionary, liability is imposed only for 'palpably unreasonable conduct'") (quoting Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 495 (2014)). Landscape's lack of applying de-icer to the walkways before 8:00 a.m. is not negligence or patently unacceptable.

In sum, as the motion court correctly explained, plaintiff's liability expert's report does not establish the topography at the station caused the patch of ice at issue to form and freeze. Based upon our de novo review, we are convinced there is no evidence in the record to establish the topography caused

the ice to form or that there was a "potential lingering hazard from directed water." We are satisfied there is no genuine material question of fact on the issue of actual or constructive notice under the TCA or common law to permit a finding that the topography caused the accumulation of ice during the storm.

To the extent we have not specifically addressed any remaining issues raised by plaintiff, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2658-24